1

2

3

4

5

6

7

8    UNITED STATES DISTRICT COURT

9    CENTRAL DISTRICT OF CALIFORNIA

10   EASTERN DIVISION

11   DANIEL DIAZ ROBLES,                    )   No. ED CV 14-1832-PA (DFM)
                                            )
12                    Petitioner,           )
                                            )   Final Report and Recommendation of
13           v.                             )   United States Magistrate Judge
                                            )
14   FRANK S. CHAVEZ, Warden,               )
                                            )
15                                          )
                     Respondent.            )
16                                          )
                                            )

17

18           This Final Report and Recommendation is submitted to the Honorable

19   Percy Anderson, United States District Judge, pursuant to the provisions of 28

20   U.S.C. § 636 and General Order 05-07 of the United States District Court for

21   the Central District of California.[1]

22   ///

23   ///

24   ─────────────────

25      [1] This Final Report and Recommendation has been issued to address
     new arguments presented in Petitioner's objections (Dkt. 23; hereinafter
26   "Objections") to the original Report and Recommendation filed on March 19,
     2015 (Dkt. 14). As these changes do not affect the Court's conclusions,
27   Petitioner was not given an opportunity to file additional objections.

28

# I.

# BACKGROUND

**A.**   **Procedural History**

A jury found Petitioner Daniel Diaz Robles guilty of first-degree murder and kidnapping and also found true gang and firearm use allegations. Clerk's Transcript ("CT") 764-76. On September 23, 2010, the trial court sentenced Petitioner to 15 years in state prison plus a consecutive 50 years to life. CT 820-21. The trial court also imposed and stayed sentences for the gang and firearm use enhancements. Id.

Petitioner filed a direct appeal. Respondent's Notice of Lodgment, Lodged Document ("LD") 6. On July 31, 2012, the California Court of Appeal affirmed the judgment but reversed and remanded for resentencing. LD 9. Petitioner filed a petition for review in the California Supreme Court, which was summarily denied on October 31, 2012. LD 10, 11.

Petitioner then filed a series of state habeas petitions. On June 24, 2013, Petitioner filed a habeas petition in the San Bernardino County Superior Court, which was denied as untimely on February 18, 2014. LD 12, 13.[2] On March 5, 2014, Petitioner filed a habeas petition in the California Court of Appeal, which was denied on April 23, 2014 as untimely and for failing to state a prima facie case for relief. LD 14-16. On May 30, 2014, Petitioner filed a habeas petition in the California Supreme Court, which was denied on August 13, 2014, with citations to Harrington v. Richter, 562 U.S. 86, 131 S.

---

[2] The filing date of June 24, 2013, applies because Petitioner is entitled to the application of the prison "mailbox rule." Houston v. Lack, 487 U.S. 266, 275-76 (1988); see also Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010) ("When a prisoner gives prison authorities a habeas petition or other pleading to mail to court, the court deems the petition constructively 'filed' on the date it is signed."). The Court will apply the mailbox rule to all of Petitioner's habeas filings.

Ct. 770, 785 (2011) and <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).  LD 17, 18.

On August 28, 2014, Petitioner filed in this Court a Petition for Writ of Habeas Corpus by a Person in State Custody. Dkt. 1 ("Petition"). On October 7, 2014, Respondent filed a motion to dismiss the Petition on the ground that it was untimely filed. Dkt. 9 ("Motion"). On December 2, 2014, Petitioner filed an opposition to the motion to dismiss. Dkt. 13 ("Opposition").

For the reasons discussed below, the Court finds that the Petition is untimely and therefore recommends that it be dismissed with prejudice.

**B.**   **Summary of the Evidence Presented at Trial**

The underlying facts are taken from the unpublished opinion of the California Court of Appeal.[3]

From January 31 to February 2, 2006, [Melquiades] Rojas testified against two fellow West Side Verdugo (WSV) gang members accused of murder of one man and attempted murder of another man. During his testimony, Rojas explained his involvement in the gang, identified the suspects, and testified about facts of the case. A jury subsequently convicted the two men. The WSV gang then labeled Rojas "a rat."

In March 2006 WSV gang member Bennie Ramirez and another man went to Rojas's apartment, where Rojas lived with Desirie Ayala (Desirie), Melissa Ayala (Melissa), and Raymond Cabral. Desirie opened the door and Ramirez asked for Rojas. She falsely told him Rojas was not there. Ramirez then pulled out a gun and ordered everyone in the apartment to go into the living

---

[3] In all quoted sections of the Report and Recommendation, the term "Defendant" has been replaced with "Petitioner."

room and to empty their pockets. Ramirez then walked around the apartment looking for things to steal. He stole Cabral's stereo, stating he was doing it because Rojas was "a rat."

Approximately two weeks later, on April 2, 2006, [co-defendant Carlos] Soto came to the front door of Rojas's apartment and Rojas left with him. An hour later, Rojas called Desirie, told her he was at Soto's home and asked her for a ride. She could not give him a ride, but he got a ride from a neighbor and returned to their apartment 15 minutes later. He looked nervous and told Desirie and Melissa to say he was not there if anyone came looking for him.

Sometime later that day, Soto and a group of Hispanic men came to the back door of Rojas's apartment. Desirie knew one of the men by the moniker "Bear." Desirie and Cabral later identified Petitioner as "Bear" from a photograph.

When Desirie opened the door, Soto asked for Rojas and she told him Rojas was not home. Soto pointed a gun at her and he and his companions forced their way into the apartment. They chased Rojas into the bathroom and began to beat him up. Cabral heard Rojas yell, "Help" and "Don't let them take me." However, the men told Cabral to mind his own business. The men then forced Rojas out of the apartment and continued beating him.

Two days later, on April 4, 2006, construction workers found Rojas's body in a canyon. He had abrasions on his face and 21 gunshot wounds from at least two different guns. Three of the gunshot wounds were in his head. He died within seconds of receiving the gunshot wounds.

A forensic technician found a nine-millimeter bullet casing

and a bloody shirt near Rojas's body. There were no other metal objects on the ground within five feet of Rojas's body. Given the number of gunshot wounds, the amount of blood near Rojas's body was inconsistent with him being killed at that location.

. . .

Approximately two-and-a-half weeks after Rojas's killing, Beaumont Detective Francisco Velasquez interviewed Petitioner after giving him the advisements required by <u>Miranda v. Arizona</u> (1966) 384 U.S. 436, 444–445 (<u>Miranda</u> advisements). Petitioner denied any involvement in the crime. However, he told Velasquez he believed he was going to "do life" and "he didn't want to do life looking over his shoulder in prison, and that—or he didn't want to do life in a green suit, meaning being in protective custody."

LD 9 at 5-7, 9.

## II.

## DISCUSSION

**A.    Statute of Limitations**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a one-year limitations period applies to a federal petition for writ of habeas corpus filed by a person in state custody. <u>See</u> 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of four alternative accrual dates. <u>See</u> 28 U.S.C. § 2244(d)(1)(A)-(D). In most cases, the limitations period begins running from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Here, Petitioner contends that limitations period began running on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

1
2
3
4
5
6
7
8
9
10
11
12

The California Supreme Court denied Petitioner's petition for review on October 31, 2012. See LD 11. Petitioner does not appear to have filed a petition for writ of certiorari in the Supreme Court. Therefore, his conviction became final 90 days later, on January 29, 2013. See Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999). Petitioner then had one year from the date his judgment became final on January 29, 2013, until January 29, 2014, to timely file a habeas corpus petition in this Court. See Patterson v. Stewart, 251 F.3d 1243, 1247 (9th Cir. 2001). Petitioner did not file the instant petition in this Court until August 28, 2014. Absent some basis for tolling the limitations period for that amount of time, or some other basis for delaying the commencement of the limitations period, the petition is untimely by more than six months.

13
14
15
16
17
18
19
20
21
22
23
24
25
26

Petitioner argues that he is entitled to a later trigger date of AEDPA's statute of limitations under § 2244(d)(1)(D) due to alleged ineffective assistance of trial counsel. Opposition at 15. Petitioner contends that counsel provided ineffective assistance by failing to challenge an alleged suggestive pretrial identification procedure. Id. Petitioner acknowledges that, in order to demonstrate ineffective assistance under Strickland v. Washington, 466 U.S. 668, 687-92 (1984), he must show both that counsel's performance was deficient and that he was prejudiced as a result. Id. Petitioner then argues that, because he "has not been able to articulate how the outcome of the trial could have been different had trial counsel challenged the impermissibly suggestive nature of the identification," he has not yet discovered the factual predicate for his ineffective assistance claim, and therefore the statute of limitations has not yet begun to run. Id. ("Hence, without that factual predicate, the clock on the claim has not even begun.").

27
28

Petitioner's reasoning demonstrates a fundamental misunderstanding of the application of § 2244(d)(1)(D). Petitioner was aware of the factual predicate

of his claims at the time of the alleged suggestive lineup, or at the latest, at the time of trial when his attorney allegedly failed to challenge the eyewitness identifications. The fact that he has yet to "articulate" how he was prejudiced by trial counsel's failure to challenge the pretrial identification, i.e., the legal significance of the alleged ineffective assistance, does not entitle him to a later trigger date. See Hasan v. Galaza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (noting that limitations period begins to run when a prisoner "knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance").[4] Petitioner is therefore not entitled to a later trigger date under § 2244(d)(1)(D).

**B.   Actual Innocence**

Petitioner contends that he is actually innocent of the charged crimes, and he therefore should be exempted from the one-year statute of limitations. Opposition at 5-8. Although there is an actual innocence exception to the statute of limitations, see McQuiggin v. Perkins, --- U.S. ---, 133 S. Ct. 1924, 1928 (2013), in order to qualify for it, a petitioner "must produce sufficient proof of his actual innocence to bring him within the narrow class of cases . . . implicating a fundamental miscarriage of justice." Lee v. Lampert, 653 F.3d 929, 937 (9th Cir. 2011) (en banc). In other words, a petition must produce

---

[4] Petitioner elaborates on this argument in his Objections, arguing that he could not have understood the significance of his counsel's failure to challenge the pretrial identification because he was not aware of the "empirical body of psychological research demonstrating that eyewitness identifications are virtually unreliable." Objections at 6. Without debating the correctness of Petitioner's statement about the science related to eyewitness identifications, Petitioner's argument misses the point. Petitioner concededly was aware that his trial counsel did not call an expert witness or offer other testimony to attempt to show that the pretrial identifications were unduly suggestive. His awareness of those facts—the factual predicate of his claims—makes the later trigger date of § 2244(d)(1)(D) inapplicable.

new, reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, demonstrating that he is actually innocent. <u>Schlup v. Delo</u>, 513 U.S. 298, 324, 327-28 (1995). While a petition is not required to demonstrate his innocence to an "absolute certainty," he must show "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." <u>Lee</u>, 653 F.3d at 938.

In support of his argument that he is actually innocent, Petitioner does not provide any new exculpatory scientific or physical evidence or trustworthy eyewitness accounts. Instead, Petitioner argues that the eyewitness identifications of Petitioner were based upon improperly suggestive identification techniques and that trial counsel was ineffective for failing to challenge these alleged improper identification procedures at trial.

The evidence at trial showed that Desirie Ayala, Melissa Ayala, and Raymond Cabral identified Petitioner as one of the men who kidnapped Rojas on April 2, 2006. <u>See</u> LD 9 at 5-7; 2 Reporter's Transcript 279-86. In addition, a gang expert testified that Petitioner was a member of the WVS gang and therefore had a motive to kill Rojas, who had testified against two fellow WVS members. <u>See</u> LD 9 at 8-9. Moreover, when Petitioner was interviewed by police, although he denied any involvement in the crime, he told police that he believed he was going to "do life" and "he didn't want to do life looking over his shoulder in prison, and that – or he didn't want to do life in a green suit, meaning being in protective custody." <u>Id.</u> at 9.

Other than challenging the procedures used to obtain the witnesses' identifications, Petitioner offers no new evidence to show that he is "within the narrow class of cases . . . implicating a fundamental miscarriage of justice." <u>Lee</u>, 653 F.3d at 937. Accordingly, the Court finds on the basis of the record now before it that Petitioner has not shown that it is more likely than not that

8

no reasonable juror would find him guilty beyond a reasonable doubt. Petitioner therefore has not established any basis for application of the actual innocence exception to the statute of limitations.

**C.    Statutory Tolling**

Under AEDPA, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). The entire period of time for a full round of collateral review, from the filing of a first state habeas petition to the time the last state habeas petition is denied, may be deemed "pending" and tolled, so long as the state petitioner proceeds in a hierarchical order from one lower state court to a higher state court. See Carey v. Saffold, 536 U.S. 214, 223 (2002). This includes so-called "gap tolling" for the periods of time between such state habeas petitions. See id.

Here, the state court judgment became final on January 29, 2013. Petitioner's first state habeas corpus petition, brought in the San Bernardino County Superior Court, was filed on June 24, 2013. Because no state habeas petition was pending between those two dates, Petitioner is not entitled to tolling of the limitations period for that time. See Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).

The Superior Court denied Petitioner's habeas petition as untimely filed. LD 13. The U.S. Supreme Court has held that "time limits, no matter their form, are 'filing' conditions." Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005). As a result, a state court's rejection of a habeas petition as untimely signifies that it was not "properly filed" and thus "not entitled to statutory tolling under § 2244(d)(2)." Id.; see also Allen v. Siebert, 552 U.S. 3, 6 (2007) (holding that any rule that "places a limit on how long a prisoner can wait before filing a postconviction petition" constitutes a filing condition). Therefore, Petitioner is

9

not entitled to any statutory tolling for the period from the filing of the habeas petition in Superior Court on June 24, 2013, to the Superior Court's denial on February 18, 2014.

Because Petitioner's state-court judgment became final on January 29, 2013, AEDPA's limitations period had already expired by the time the Superior Court denied his habeas petition as improperly filed. Petitioner then filed a habeas petition in the California Court of Appeal on March 5, 2014. See LD 15. But as this habeas petition was filed after the limitations period had already elapsed, this habeas petition does not entitle Petitioner to any statutory tolling. See, e.g., Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) (holding that section 2244(d) "does not permit the reinitiation of the limitations period that has ended before the state petition was filed," even if the state petition was timely filed); Jimenez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001); Wixom v. Washington, 264 F.3d 894, 898-99 (9th Cir. 2001).

After the California Court of Appeal also denied Petitioner's habeas petition as untimely filed, see LD 15, the California Supreme Court in turn denied Petitioner's subsequently-filed habeas petition "on the merits." LD 18. However, the denial of the claims on the merits by the California Supreme Court does not necessarily mean that that the lower court petitions were deemed timely. See Evans v. Chavis, 546 U.S. 1899, 197 (2006) (holding that "a California Supreme Court order denying a petition 'on the merits' does not automatically indicate that the petition was timely filed") (quoting Saffold v. Carey, 536 U.S. 214, (2002)). Subsequent to Evans, the Ninth Circuit has determined that statutory tolling applies to state petitions for writs of habeas corpus that are denied as untimely only if a higher court later reverses the untimeliness finding. See Campbell v. Henry, 614 F.3d 1056, 1060-61 (9th Cir. 2010); see also Trigueros v. Adams, 658 F.3d 983, 990 (9th Cir. 2011). ///

10

Here, there is nothing in the California Supreme Court's order denying Petitioner's habeas petition to indicate that the California Supreme Court reversed the lower courts' findings of untimeliness. The California Supreme Court indicated that it was denying the habeas petition "on the merits," citing Harrington v. Richter, 562 U.S. 86, 99-100 (2011) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). See LD 18. That portion of Richter stands for the proposition that the presumption that a state court had denied a federal constitutional claim on the merits can be overcome "when there is reason to think some other explanation for the state court's decision is more likely." 562 U.S. at 99-100. Thus, the citation to Richter and Ylst in no way appears to suggest that the California Supreme Court was reversing the untimeliness finding made by the Superior Court and the California Court of Appeal.[5] As a result, Petitioner is not entitled to statutory tolling for the period implicated by his state habeas petitions filed in those courts.

In sum, Petitioner is not entitled to any period of statutory tolling. Thus, absent equitable tolling, the Petition is untimely.

///

---

[5] By contrast, in Trigueros, the Ninth Circuit ultimately concluded that a habeas petition found untimely by the Superior Court was "properly filed" because of "highly significant" and "compelling factual circumstances" present in that case, namely, "the California Supreme Court's request for informal briefing from the State of California . . . on Trigueros's habeas petition [which] led to the California Supreme Court making a finding of timeliness, and deciding Trigueros's habeas petition on the merits." 658 F.3d at 986, 990. Here, the California Supreme Court summarily denied Petitioner's habeas petition without requesting any briefing or making any express or implied findings. See Jones v. Lackner, No. 12-10176, 2014 WL 2812492, at *6 (C.D. Cal. June 16, 2014) (distinguishing Trigueros because California Supreme Court did not request informal briefing on the merits and timeliness issue before denying relief without citations or comment).

**D.   Equitable Tolling**

In <u>Holland v. Florida</u>, 560 U.S. 631, 649 (2010), the Supreme Court held that AEDPA's one-year limitation period is subject to equitable tolling in appropriate cases. However, in order to be entitled to equitable tolling, the petitioner must show both "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented his timely filing. <u>Id.</u> at 649 (quoting <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)). The Ninth Circuit has held that the <u>Pace</u> standard is consistent with the Ninth Circuit's "sparing application of the doctrine of equitable tolling." <u>Waldron-Ramsey v. Pacholke</u>, 556 F.3d 1008, 1011 (9th Cir. 2009). Thus, "[t]he petitioner must show that 'the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time.'" <u>Porter v. Ollison</u>, 620 F.3d 952, 959 (9th Cir. 2010) (quoting <u>Ramirez v. Yates</u>, 571 F.3d 993, 997 (2009)). "Indeed, the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." <u>Miranda v. Castro</u>, 292 F.3d 1063, 1066 (9th Cir. 2002) (internal quotation marks and citation omitted).

Consequently, as the Ninth Circuit has recognized, equitable tolling will be justified in few cases. <u>Spitsyn v. Moore</u>, 345 F.3d 796, 799 (9th Cir. 2003); <u>see also</u> <u>Waldron-Ramsey</u>, 556 F.3d at 1011 ("To apply the doctrine in 'extraordinary circumstances' necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling.'" (quoting <u>Harris v. Carter</u>, 515 F.3d 1051, 1054-55 (9th Cir. 2008))).

Petitioner contends that he is entitled to equitable tolling because he did not have access to his legal file and was therefore unable to timely file his

federal habeas petition and because his appellate attorney allegedly gave him erroneous advice regarding when he should file a state habeas petition. The Court will address each argument in turn.

Petitioner alleges that he was housed in a "reception center" and in administrative segregation and was denied access to his legal file. Opposition at 13. Although in certain limited circumstances, a lack of access to legal resources may be an extraordinary circumstance warranting equitable tolling, see, e.g., Lott v. Mueller, 304 F.3d 918, 924-25 (9th Cir. 2002), Petitioner has not pointed to any specific materials to which he did not have access nor explain why he needed them in order to file a timely federal habeas petition. The fact that Petitioner filed lengthy state court petitions during the limitations period indicates that he either had access to his legal materials or did not need them in order to timely file. Therefore, Petitioner has not shown that, despite his own diligence, "the hardship caused by lack of access to his materials was an extraordinary circumstance" that resulted in the untimeliness of his petition. See Waldron-Ramsey, 556 F.3d at 1013 (holding that petitioner was not entitled to equitable tolling for alleged deprivation of access to his legal materials where he did not point to any specific instance in which he needed a particular document and could not procure it).

Petitioner also argues that he is entitled to equitable tolling because his appellate attorney erroneously advised him that he should wait to file a state habeas petition until after appellate counsel had filed Petitioner's direct appeal. Opposition at 8, 10. Although an attorney's sufficiently egregious misconduct may constitute an "extraordinary circumstance" to warrant equitable tolling, Petitioner has failed to demonstrate both the requisite egregious attorney misconduct and his own reasonable diligence. See Porter v. Ollison, 620 F.3d 952, 959 (9th Cir. 2010); Spitsyn, 345 F.3d at 800-02 (finding the lawyer's misconduct was sufficiently egregious to constitute an "extraordinary

13

circumstance" for the purpose of equitable tolling where the lawyer denied the petitioner access to files, failed to prepare a petition, and did not respond to the petitioner's communications). By Petitioner's own admission, appellate counsel advised him to file a habeas petition in the superior court "right after the California Supreme Court denies review." Opposition at 10. The California Supreme Court denied Petitioner's petition for review on October 31, 2012; however, Petitioner did not file his first habeas petition in state court until June 24, 2013, almost eight months later. Even assuming that appellate counsel gave erroneous legal advice, Petitioner has neither shown that this was sufficiently "egregious misconduct" nor that he acted with "reasonable diligence," in order to be entitled to equitable tolling of the statute of limitations.

The Court accordingly finds that Petitioner has not met his burden of showing that his lack of access to his legal file made it impossible for him to file timely his federal habeas petition. The Court also finds that Petitioner has not shown either sufficiently egregious misconduct by his appellate counsel or that he acted with reasonable diligence. Therefore, Petitioner is not entitled to equitable tolling.

## III.

## CONCLUSION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) granting Respondent's motion to dismiss; and (3) directing that Judgment be issued denying the Petition and dismissing this action with prejudice.

Dated:  July 31, 2015

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

14